1 Jeffrey K. Brown, Bar No. 162957
jrm@paynefears.com
2 Matthew J. Cute, Bar No. 265158
mjc@paynefears.com
3 PAYNE & FEARS LLP
4 Park Plaza, Suite 1100
4 Irvine, California 92614
Telephone: (949) 851-1100
5 Facsimile: (949) 851-1212

6 Howard S. Goldfarb
hgoldfarb@homerbonner.com
7 (pro hac vice application pending)
HOMER BONNER JACOBS, P.A.
8 1200 Four Seasons Tower
1441 Brickell Ave.
9 Miami, Florida  33131
Telephone:  (305) 350-5115
10 Facsimile:  (305) 982-0089

11 Attorneys for Defendant
CORINTHIAN COLLEGES, INC.

12

13 **UNITED STATES DISTRICT COURT**

14 **CENTRAL DISTRICT OF CALIFORNIA**

15

| | |
|---|---|
| 16 WILLIAM G. RANSEL, Class Representative, and Does 1-50, inclusive, | Case No.  5:14-cv-01296-GW-MAN |
| 17 | (San Bernardino County Superior Court Case No. CIVDS1312837) |
| 18 Plaintiffs, | **DEFENDANT CORINTHIAN COLLEGES, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION** |
| 19 v. | |
| 20 CORINTHIAN COLLEGES, INC., a Delaware corporation doing business as Everest College, DAPHNE HERNDON, and Does 1-50, inclusive, | |
| 21 | |
| 22 Defendants. | |
| 23 | Judge:          Hon. George H. Wu |
| 24 | Hearing Date: July 31, 2014 |
| | Time:           8:30 a.m. |
| 25 | Courtroom:    10, Los Angeles – Spring St. |

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION..................................................................................1

II. STATEMENT OF FACTS ....................................................................2

    A.    The Binding Arbitration Agreements ......................................2

    B.    Plaintiff's Allegations ...............................................................5

III. ARGUMENT .......................................................................................6

    A.    Federal Law Mandates That Plaintiff's Alleged Claims Be Arbitrated ...............................................................................6

    B.    A Valid Arbitration Agreement Exists Between Plaintiff and the School ....................................................................................8

    C.    Plaintiff's Alleged Claims Fall Within the Scope of the Arbitration Provisions.............................................................9

    D.    The School Has Not Waived Its Right to Compel Arbitration.............10

    E.    The Court Must Compel Plaintiff to Individual Arbitration ................10

    F.    To the Extent Plaintiff Contests the Validity of the Arbitration Agreements, That Question Is for the Arbitrator—Not This Court ......11

    G.    This Action Should Be Dismissed or, Alternatively, Stayed Pending Arbitration .............................................................14

IV. CONCLUSION ...................................................................................14

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*24 Hour Fitness, Inc. v. Superior Court*,
   66 Cal. App. 4th 1199 (1998) ............................................................. 8

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..................................................................... 11, 12

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ........................................................................... 7

*Cione v. Foresters Equity Servs., Inc.*,
   58 Cal. App. 4th 625 (1997) ............................................................... 9

*Circuit City Stores, Inc. v. Adams*,
   532 U.S. 105 (2001) ........................................................................... 7

*Citizens Bank v. Alafabco, Inc.*,
   539 U.S. 52 (2003) ......................................................................... 6, 7

*Clarium Capital Management, LLC v. Choudhury*,
   Nos. C 08-5157SBA, 06-5255, 2009 WL 331588 (N.D. Cal. Feb. 11, 2009) ... 13

*Comedy Club, Inc. v. Improv W. Assocs.*,
   553 F.3d 1277 (9th Cir. 2009) ............................................................ 9

*Contec Corp. v. Remote Solution Co.*,
   398 F. 3d 205 (2d Cir. 2005) ............................................................ 13

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ....................................................................... 6, 7

*DMS Servs., Inc. v. Superior Court*,
   205 Cal. App. 4th 1346 (2012) ........................................................... 8

*Dryer v. Los Angeles Rams*,
   40 Cal. 3d 406 (1985) ........................................................................ 8

*Fallo v. High-Tech Inst.*,
   559 F. 3d 874 (8th Cir. 2009) .......................................................... 12

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

1
2
*Green Tree Fin. Corp. v. Randolph*,
   531 U.S. 79 (2000) .................................................................... 7

3
4
*Kimble v. Rhodes College, Inc.*,
   No. C–10–5786 EMC, 2011 WL 2175249 (N.D. Cal. June 2, 2011)............... 13

5
6
*Koyoc v. Progress Fin. Co.*,
   No. CV 13–09165–RSWL, 2014 WL 1878903 (C.D. Cal. May 9, 2014)......... 12

7
*Lewis v. Fletcher Jones Motor Cars, Inc.*,
   205 Cal. App. 4th 436 (2012) ........................................................ 10

8
9
10
*Madrigal v. New Cingular Wireless Services, Inc.*,
   No. 09-CV-00033-OWW-SMS, 2009 WL 2513478 (E.D. Cal. Aug. 17,
   2009)...................................................................................... 13

11
12
*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ............................................................... 6, 7, 14

13
14
*Oracle Am., Inc. v. Myriad Group. A.G.*,
   724 F. 3d 1069 (9th Cir. 2013) ...................................................... 12

15
*Qualcomm, Inc. v. Nokia Corp.*,
   466 F. 3d 1366 (Fed. Cir. 2006)..................................................... 12

16
17
*Rent-A-Center, West, Inc. v. Jackson*,
   130 S. Ct. 2772 (2010) ............................................................... 11

18
19
*RN Solution, Inc. v. Catholic Healthcare W.*,
   165 Cal. App. 4th 1511 (2008)......................................................... 8

20
21
*Rodriguez de Quijas v. Shearson/American Exp., Inc.*,
   490 U.S. 477 (1989) .................................................................... 7

22
23
*Southland Corp. v. Keating*,
   465 U.S. 1 (1984) ....................................................................... 6

24
25
*St. Agnes Med. Ctr. v. Pacificare of Cal.*,
   31 Cal. 4th 1187 (2003)............................................................... 10

26
27
28
*Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*
   559 U.S. 662 (2010) ................................................................... 10

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

*Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*,
    432 F. 3d 1327 (11th Cir. 2005)........................................................ 13

*Thomas v. Westlake*,
    204 Cal. App. 4th 605 (2012).......................................................... 8

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960) ........................................................................ 9

*Visa USA, Inc. v. Maritz, Inc.*,
    No. C 07-05585 JSW, 2008 WL 744832 (N.D. Cal. March 18, 2008) ............. 13

**STATUTES**

9 U.S.C. §§ 1 *et seq.* .............................................................................. 6

9 U.S.C. § 2 ............................................................................ 6, 7, 11

9 U.S.C. § 3 ................................................................................ 14

9 U.S.C. §§ 3, 4 ....................................................................... 6, 11

9 U.S.C. § 4 ................................................................................. 6

California Business and Professions Code § 17200........................... 2, 5

California Business and Professions Code § 17500........................... 2, 5

Defendant Corinthian Colleges, Inc. (the "School") hereby submits the following memorandum of points and authorities in support of the School's Motion to Compel Individual Arbitration And Dismiss or Stay Proceedings Pending Arbitration and seeks an order requiring Plaintiff William Ransel ("Plaintiff") to do what he agreed to do when he enrolled in the School: submit his purported claims to binding individual arbitration before the American Arbitration Association ("AAA").  This case does not belong in this Court and it should be compelled to individual arbitration, and this proceeding should be dismissed or, alternatively stayed, pending individual arbitration.

## I.    **INTRODUCTION**

The School is an educational institution accredited by the Accrediting Council for Independent Colleges and Schools, a United States Department of Education-recognized accreditor.  In January 2009, Plaintiff enrolled in the School's Electrician program (the "Program") located at the School's Everest College campus in San Bernardino, California.

As part of his enrollment, Plaintiff signed several enrollment documents, two of which contain arbitration agreements.  These contractual provisions, written in plain and ordinary language, require that "any dispute" between Plaintiff and the School be resolved by binding arbitration before the AAA and pursuant to the Federal Arbitration Act ("FAA").  Plaintiff breached these binding arbitration provisions by filing this lawsuit.

All of Plaintiff's alleged claims, which are substantially flawed, fall squarely within the broad scope of the arbitration agreements.  Plaintiff's purported class action lawsuit alleges that the School engaged in purported misleading recruiting tactics and made supposed misrepresentations to Plaintiff and supposed members of the putative class to induce them to enroll in the School, which allegedly caused them to incur student loans.  Based on these allegations, Plaintiff asserts purported

claims for fraud/fraudulent inducement (Claim 1), negligent misrepresentation (Claim 2), breach of contract (Claim 3), unjust enrichment (Claim 4), declaratory relief (Claim 5), unfair business practices under California Business and Professions Code Section 17200 (Claim 6), false advertising under California Business and Professions Code Section 17500 (Claim 7), qui tam action (Claim 8), and conversion/theft by trick or device (Claim 9).  Plaintiff's purported claims, which arise exclusively from Plaintiff's enrollment at the School, are clearly contemplated by the agreed-upon binding arbitration provisions and must be resolved by individual arbitration.

As explained below, the Court must compel individual arbitration of Plaintiff's purported claims and then dismiss or, alternatively, stay the action pending individual arbitration.

## II.  STATEMENT OF FACTS

### A.  The Binding Arbitration Agreements

In January 2009, Plaintiff enrolled in the Program at the School's Everest campus in San Bernardino, California.  (First Am. Compl., ¶¶ 11, 91, 96.)[1]  In connection with his enrollment with the School, on January 7, 2009, Plaintiff executed an enrollment agreement (the "Enrollment Agreement," attached as Exhibit "A" to the Declaration of Julie Cortez ("Cortez Decl.") filed concurrently herewith, ¶ 2) and an Enrollment Agreement Addendum & Disclosures (the "Addendum," attached as Exhibit "B" to the Cortez Decl., ¶ 2).  The Enrollment Agreement contains the following binding arbitration clause:

---

[1] Citations to Plaintiff's First Amended Complaint are referred to herein as "First Am. Compl., ¶ —."

**Acknowledgment of Waiver of Jury Trial and Availability of AAA Rules**

By my signature, I acknowledge that I understand that both I and The School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding, and not merely advisory. I also acknowledge that I may at any time, before or after my admission, obtain a copy of the Rules of the American Arbitration Association, at no cost, from The School President.

Cortez Decl., Exh. A, at p. 3.  On the same page, Plaintiff signed the Enrollment Agreement and agreed to the foregoing binding arbitration clause:

| SIGNATURES | | | |
| --- | --- | --- | --- |
| SIGNATURE OF STUDENT | DATE | IF UNDER 18, SIGNATURE OF PARENT OR GUARDIAN | DATE |
| *William Ransel* | 1-7-09 | | |

Cortez Decl., Exh. A, at p. 3.

Additionally, in the Addendum, Plaintiff agreed that "**any dispute**" arising from his enrollment, no matter how described, pleaded, or styled, "**shall be**" resolved by binding arbitration under the FAA conducted by the AAA's Consumer Rules:

**AGREEMENT TO BINDING ARBITRATION AND WAIVER OF JURY TRIAL**

I agree that any dispute arising from my enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Consumer Rules.   INITIALS: *BR*

Cortez Decl., Exh. B, at p. 5 (emphasis added).  The Addendum also includes the "Terms of Arbitration" between Plaintiff and the School.  This section, which was agreed to and initialed by Plaintiff, mandates, among other items, that "**any dispute**" between Plaintiff and the School "**shall be submitted**" to arbitration:

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

**Terms of Arbitration**

1. Both I and the School irrevocably agree that any dispute between us shall be submitted to Arbitration.
2. Neither I nor the the School shall file or maintain any lawsuit in any court against the other, and agree that any suit filed in violation of this Agreement shall be dismissed by the court in favor of an arbitration conducted pursuant to this Agreement. Both I and the School agree that filing a court action will cause damage to the other party. We agree that an appropriate measure of this damage includes the costs and attorney's fees actually incurred in compelling arbitration. Such damages shall be paid by the party who has filed an action in court within 30 days of the court's order compelling arbitration.
3. The costs of the arbitration filing fee, arbitrator's compensation and facilities fees will be paid by the School, to the extent that these fees are greater than the applicable Court filing fee. The School shall not be solely responsible for arbitration costs beyond those for an individual student's claim.
4. I agree not to combine or consolidate any Claims with those of other students, such as in a class or mass action. *I may opt out of this no-consolidation provision by delivering a written statement to that effect received by the School within 30 days of my first execution of an Enrollment Agreement with the School.*
5. Any remedy available from a court under the law shall be available in the arbitration.
6. Nothing in this Agreement prohibits me from filing a complaint with the state regulatory agency.   INITIALS: *BR*

Cortez Decl., Exh. B, at p. 5 (emphasis added).

The Addendum also includes a section entitled "Acknowledgement of Waiver of Jury Trial and Availability of AAA Rules."  This section, which was agreed to by Plaintiff—as evinced by his initials—states that Plaintiff understood that he and the School agreed to "submit any and all claims to the decision of an arbitrator instead of a court[:]"

**ACKNOWLEDGEMENT OF WAIVER OF JURY TRIAL AND AVAILABILITY OF AAA RULES**

By my signature, I acknowledge that I understand that both I and the School are irrevocably waiving rights to a trial by jury, and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court. I understand that the award of the arbitrator will be binding and not merely advisory.   INITIALS: *BR*

Cortez Decl., Exh. B, at p. 5.  Plaintiff signed the Addendum acknowledging that the School was relying on his agreements and representations when considering his admission and consequently he would be bound by the same:

**SIGNATURES**

By signing my name in the space provided below, I verify that I have read, understood and agree with the statements and agreements contained in this Enrollment Agreement Addendum & Disclosures form. I acknowledge that the School is relying on my agreements and representations when considering my admission. I will be bound by my agreements and representations.

| *William Ransel* | *WILLIAM RANSEL* | 1/7/09 |
| SIGNATURE OF STUDENT | PRINTED NAME OF STUDENT | DATE |
| *Daphne Herndon* | *Daphne Herndon* | 1/7/09 |
| SIGNATURE OF SCHOOL REPRESENTATIVE | PRINTED NAME OF SCHOOL REPRESENTATIVE | DATE |

Cortez Decl., Exh. B, at p. 5.

-4-

In total, Plaintiff affirmed his consent to binding arbitration **five times** through either signing these documents or initialing the specific arbitration provisions. These agreements must be enforced under the FAA.

### B.    <u>Plaintiff's Allegations</u>[2]

Plaintiff filed this supposed class action lawsuit alleging a dispute arising exclusively from his and the purported class members' enrollment at the School. Plaintiff's lawsuit alleges that the School engaged in purported misleading recruiting tactics and made supposed misrepresentations to Plaintiff and supposed class members to induce them to enroll in the School, which allegedly caused them to incur student loans.[3]  (First Am. Compl., ¶¶ 2, 9, 15.)  Based on these allegations, Plaintiff asserts nine (9) purported claims against the School, a School employee, and unnamed "Does,"[4] which include alleged claims for fraud/fraudulent inducement (Claim 1), negligent misrepresentation (Claim 2), breach of contract (Claim 3), unjust enrichment (Claim 4), declaratory relief (Claim 5), unfair business practices under California Business and Professions Code Section 17200 (Claim 6), false advertising under California Business and Professions Code Section 17500

---

[2] The School submits this motion in lieu of filing an answer to the First Amended Complaint, but generally denies all allegations made by Plaintiff in the First Amended Complaint.  By filing this motion, the School does not waive, and expressly reserves, its right to submit an answer to the First Amended Complaint or to assert any available defenses in the event that the Court denies this motion.

[3]  Plaintiff alleges that the purported class is comprised of "all Students and Potential Students to whom the Defendants made false statements and misrepresentations in an effort to obtain money from government agencies through those Class Members."  (First Am. Compl., ¶ 2.)

[4] The School employee is Daphne Herndon ("Herndon"), who Plaintiff alleges is the School's "authorized agent and 'Admissions Representation.'" (First Am. Compl., ¶ 91.)  Plaintiff alleges that Herndon supposedly advised Plaintiff that the Program would purportedly provide Plaintiff with training hours that could be used to satisfy a portion of the total hours required to become a union authorized electrician.  *Id.* Plaintiff alleges that he does not know the names and capacities, whether individual, corporate, associate, or otherwise, of the "Does," and does not assert any specific allegations of wrongdoing against them.  (First Am. Compl., ¶¶ 4, 6.)

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

1  (Claim 7), qui tam action (Claim 8), and conversion/theft by trick or device (Claim

2  9).

3  **III.   ARGUMENT**

4      **A.   Federal Law Mandates That Plaintiff's Alleged Claims Be**

5            **Arbitrated**

6          Plaintiff and the School expressly agreed that "any dispute" between them

7  shall be arbitrated "under the Federal Arbitration Act."  Cortez Decl., Exh. A, at p.

8  3, Exh. B, at p. 5.   Accordingly, the Court's examination of the arbitration

9  agreement is controlled by the FAA.  *See Citizens Bank v. Alafabco, Inc.,* 539 U.S.

10  52, 55-58 (2003); 9 U.S.C. § 2.  The FAA establishes a national policy favoring

11  arbitration where, as here, the parties contract for that mode of dispute resolution.

12  *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219 (1985) ("The Act, after all,

13  does not mandate the arbitration of all claims, but merely the enforcement—upon

14  the motion of one of the parties—of privately negotiated arbitration agreements.");

15  *Southland Corp. v. Keating,* 465 U.S. 1, 10 (1984); 9 U.S.C. §§ 1 *et seq.*  Indeed,

16  the United States Supreme Court interprets the FAA as creating a "liberal federal

17  policy favoring arbitration agreements, notwithstanding any state substantive or

18  procedural policies to the contrary."   *Moses H. Cone Mem'l Hosp. v. Mercury*

19  *Constr. Corp.,* 460 U.S. 1, 24 (1983).

20          The FAA mandates that a court must order arbitration when it is satisfied that

21  the execution of the arbitration agreement is not at issue.  9 U.S.C. § 4; *see, e.g.,*

22  *Dean Witter Reynolds, Inc*., 470 U.S. at 218 (citing 9 U.S.C. §§ 3, 4) (determining

23  that the FAA, "leaves no place for the exercise of discretion by a district court, but

24  instead mandates that district courts *shall* direct the parties to proceed to arbitration

25  on issues as to which an arbitration agreement has been signed") (emphasis in

26  original).  Moreover, "any doubts concerning the scope of arbitrable issues should be

27  resolved in favor of arbitration, whether the problem at hand is the construction of

28

1   the contract language itself or an allegation of waiver, delay, or a like defense to

2   arbitrability." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

3       Federal policy favors enforcing arbitration agreements to the broadest possible

4   extent. *See, e.g., Dean Witter Reynolds, Inc.*, 470 U.S. at 221 ("The preeminent

5   concern of Congress in passing the Act was to enforce private agreements into

6   which parties had entered, and that concern requires that we rigorously enforce

7   agreements to arbitrate, even if the result is "piecemeal" litigation, at least absent a

8   countervailing policy manifested in another federal statute")*; Rodriguez de Quijas v.*

9   *Shearson/American Exp., Inc.*, 490 U.S. 477 (1989). Plaintiff bears the burden of

10  proof if he seeks to avoid arbitration. *See Green Tree Fin. Corp. v. Randolph*, 531

11  U.S. 79, 91 (2000) ("[T]he party resisting arbitration bears the burden of proving

12  that the claims at issue are unsuitable for arbitration."). Thus, where the agreement

13  to arbitrate is not revocable under ordinary principles of contract, a court has no

14  discretion to deny a motion to compel arbitration. *See Buckeye Check Cashing, Inc.*

15  *v. Cardegna*, 546 U.S. 440, 447 (2006) (determining that 9 U.S.C. § 2 requires

16  arbitration agreements to be treated like all other contracts).

17      The FAA also applies, beyond the parties' express agreement to apply the

18  FAA, because the FAA applies to every contract involving interstate commerce. 9

19  U.S.C. § 2; *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 (2001). The words

20  "involving commerce" as used in the FAA are equivalent to "affecting commerce,"

21  and signal an intent to exercise Congress' commerce power to the fullest extent of

22  the Commerce Clause. Because the statute provides for the enforcement of

23  arbitration agreements within the full reach of the Commerce Clause, the FAA

24  encompasses a wider range of transactions than those actually "in commerce"—that

25  is "within the flow of interstate commerce." *Citizens Bank,* 539 U.S. at 56.

26      Here, on behalf of a purported nationwide class, Plaintiff has sued the School,

27  a Delaware incorporated educational institute, for supposed tortious acts committed

28  at the School's 103 colleges in 25 different states. (First Am. Compl., ¶¶ 1, 3, 12.)

1  Because the School's operations and Plaintiff's and the purported class members'

2  enrollment in the School implicate interstate commerce, the FAA applies.

3

4          **B.     A Valid Arbitration Agreement Exists Between Plaintiff and the**

5                  **School**

6          As set forth above, both the Enrollment Agreement and the Addendum

7  contain clear and unambiguous agreements to arbitrate.  *See, e.g.,* Cortez Decl.,

8  Exh. A, at p. 3, Exh. B, at p. 5; *supra* Section II.A.  Plaintiff agreed to arbitrate "**any**

9  **dispute**" between him and the School, "no matter how described, pleaded, or

10 styled."  Cortez Decl., Exh. B, at p. 5 (emphasis added).  Valid written agreements

11 exist and there can be no dispute regarding the existence or validity of the

12 Enrollment Agreement and Addendum, or the arbitration provisions contained

13 therein.[5]

14

15

16

17

_____

18      [5] Defendant Herndon may also enforce these arbitration agreements.  As a threshold matter,
    Herndon is a signatory to both the Enrollment Agreement and Addendum, *see* Cortez Decl., Exh.
19  A, at p. 3, Exh. B, at p. 5, and therefore Herndon may compel arbitration on the same grounds as
    the School.  In addition, Herndon may also enforce the arbitration agreements even if considered a
20  non-signatory.  Plaintiff asserts alleged claims against Herndon, as well as the fictitious "Does," in
    their capacities as purported agents of the School.  *See* First Am. Compl., ¶ 5 (alleging that
21  Herndon and the "Does" are sued "individually, as well as in their capacity as principals and/or
    agents, servants and/or employees of said principals"), ¶ 91 (referring to Herndon as the School's
22  "authorized agent").  Accordingly, as an employee and purported agent of the School, Plaintiff
    shares a sufficient identity of interest to enforce the arbitration agreements as a non-signatory.  *See*
23  *Thomas v. Westlake,* 204 Cal. App. 4th 605, 614 (2012) ("when a plaintiff alleges a defendant
    acted as an agent of a party to an arbitration agreement, the defendant may enforce the agreement
24  even though the defendant is not a party thereto.") (citing *Dryer v. Los Angeles Rams,* 40 Cal. 3d
    406, 418 (1985); *RN Solution, Inc. v. Catholic Healthcare W.,* 165 Cal. App.4th 1511, 1520
25  (2008); *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal. App. 4th 1199, 1210 (1998)).  Allowing a
    non-signatory to enforce an arbitration agreement in this manner is "generally based on the
26  existence of a relationship between the nonsignatory and the signatory, such as principal and agent
    or employer and employee, where a sufficient identity of interest exists between them."  *DMS*
27  *Servs., Inc. v. Superior Court*, 205 Cal. App. 4th 1346, 1353 (2012) (internal citations omitted).

28

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION

**C.** **Plaintiff's Alleged Claims Fall Within the Scope of the Arbitration Provisions**

The Court must compel arbitration because Plaintiff's alleged claims fall within the scope of claims contemplated by the Enrollment Agreement and Addendum.  These agreements provide that Plaintiff and the School would, "**submit any and all claims** to the decision of an arbitrator instead of a court."  Cortez Decl., Exh. A, at p. 3, Exh. B, at p. 5 ("Both I and the School irrevocably agree that **any dispute between us** shall be submitted to Arbitration") (emphasis added).  Further, all of Plaintiff's alleged claims stem from his enrollment at the School, which is expressly included within the scope of the arbitration provisions.  Cortez Decl., Exh. B, at p. 5 ("any dispute arising from my enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration").

Even if an ambiguity exists (and none does), the Court is nevertheless bound to order arbitration absent "positive assurance" that the enrollment documents do not cover a given dispute.  *See United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."); *Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1284 (9th Cir. 2009); *Cione v. Foresters Equity Servs., Inc.*, 58 Cal. App. 4th 625, 642 (1997) ("A heavy presumption weighs the scales in favor of arbitrability; an order directing arbitration should be granted unless it may be said with positive assurances that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage.") (internal quotations omitted).  Plaintiff does not (because he cannot) allege that the instant claims fall outside the scope of the arbitration agreements—much less provides the requisite "positive assurance."

1   Hence, the broad language of the arbitration agreements undoubtedly covers

2   Plaintiff's purported claims.

3

4   **D.   <u>The School Has Not Waived Its Right to Compel Arbitration.</u>**

5   The School has not waived their right to arbitrate this matter. "Based on the

6   public policy favoring arbitration, claims of waiver receive 'close judicial scrutiny'

7   and the 'party seeking to establish a waiver bears a heavy burden.'"   *Lewis v.*

8   *Fletcher Jones Motor Cars, Inc.*, 205 Cal. App. 4th 436, 444 (2012) (quoting *St.*

9   *Agnes Med. Ctr. v. Pacificare of Cal.*, 31 Cal. 4th 1187, 1195 (2003)).  Six factors

10  are considered in assessing claims of waiver:

11          (1) whether the party's actions are inconsistent with the right to
            arbitrate; (2) whether the litigation machinery has been substantially
12          invoked and the parties were well into preparation of a lawsuit before
            the party notified the opposing party of an intent to arbitrate; (3)
13          whether a party either required arbitration enforcement close to the
            trial date or delayed for a long period before seeking a stay; (4)
14          whether a defendant seeking arbitration filed a counterclaim without
            asking for a stay of the proceedings; (5) whether important
15          intervening steps [e.g. taking advantage of judicial discovery
            procedures not available in arbitration] had taken place; and (6)
16          whether the delay affected, misled, or prejudiced the opposing party.

17  *Id.* (internal quotations omitted).  Not one of these six factors applies to this matter.

18  The instant motion is the School's first substantive response to Plaintiff's First

19  Amended Complaint, and this response seeks the enforcement of the arbitration

20  provisions.  By timely moving to compel arbitration in response to Plaintiff's First

21  Amended Complaint, the School has preserved and not waived its right to

22  arbitration.  Accordingly, the School has not waived or forfeited its right to arbitrate

23  this matter, and the Court must enter an order compelling arbitration.

24

25  **E.   <u>The Court Must Compel Plaintiff to Individual Arbitration</u>**

26  The Court must compel Plaintiff to arbitrate his alleged claims on an

27  individual basis.  Under the FAA, parties cannot combine their alleged dispute into a

28  single arbitration unless there is a contractual basis for concluding the parties agreed

-10-

1  to arbitrate on a classwide basis. *See Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*
2  559 U.S. 662, 683-84 (2010) (holding that "parties may specify *with whom* they
3  choose to arbitrate their disputes" and "a party may not be compelled under the FAA
4  to submit to class arbitration unless there is a contractual basis for concluding that
5  the party *agreed* to do so") (emphasis in original).  Here, Plaintiff expressly agreed
6  in his arbitration agreements not to combine or consolidate his alleged claims against
7  the School with other students, such as in a class or mass action.  Cortez Decl., Exh.
8  B, at p. 5 ("I agree not to combine or consolidate any Claims with those of other
9  students, such as in a class or mass action").  Accordingly, the FAA mandates that
10 Plaintiff be compelled to individual arbitration.

12 **F.   To the Extent Plaintiff Contests the Validity of the Arbitration**
13 **Agreements, That Question Is for the Arbitrator—Not This Court**

14       Although the School can only speculate why Plaintiff has not submitted his
15 dispute to individual arbitration as he agreed to do, Plaintiff cannot challenge the
16 validity of the arbitration agreements in this Court.  The parties have delegated the
17 issue of arbitrability to the arbitrator.

18       The United States Supreme Court has held that the arbitrator—not a court—
19 must decide questions of the enforceability of an arbitration agreement when the
20 agreement delegates that authority to the arbitrator.  *Rent-A-Center, West, Inc. v.
21 Jackson*, 130 S. Ct. 2772, 2779 (2010).  Unless a plaintiff specifically challenges a
22 provision delegating such questions to the arbitrator (which Plaintiff cannot do here),
23 courts "must treat [such delegation] as valid under § 2 [of the Federal Arbitration
24 Act], and must enforce it under §§ 3 and 4, leaving any challenge to the validity of
25 the [a]greement as a whole for the arbitrator." *Id.* at 2780.  Courts find that parties
26 agreed to arbitrate the question of arbitrability when they "clearly and unmistakably
27 provide" as such. *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643,
28 649 (1986).

1    Here, the arbitration provisions at issue "clearly and unmistakably" provide

2    that the parties have delegated gateway issues of arbitrability to the arbitrator.

3    Plaintiff agreed in his Enrollment Agreement and Addendum to submit "any

4    dispute" to "binding arbitration under the Federal Arbitration Act conducted by the

5    American Arbitration Association ("AAA") under its Consumer Rules."   Cortez

6    Decl., Exh. B at p. 5.   As a threshold matter, the broad language of the arbitration

7    agreements encompassing "any dispute" creates a presumption of arbitrability.

8    *Koyoc v. Progress Fin. Co.*, No. CV 13–09165–RSWL (AGRx), 2014 WL 1878903,

9    at *2 (C.D. Cal. May 9, 2014) ("Where the arbitration provision is broad, there is a

10   heightened presumption in     favor    of arbitration such    that    the    party

11   resisting arbitration must show "forceful evidence of a purpose to exclude the claim

12   from arbitration") (quoting *AT&T Tech., Inc.,* 475 U.S. at 650)).   Nevertheless, Rule

13   R-7(a) of the AAA Commercial Rules (which the Consumer Rules are a supplement

14   to) provides that "[t]he arbitrator shall have the power to rule on his or her own

15   jurisdiction, including any objections with respect to the existence, scope or validity

16   of the arbitration agreement."[6]

17       Numerous courts, including California federal courts, have reviewed similar

18   arbitration provisions and held that, by incorporating the AAA rules into an

19   arbitration provision, the parties have indicated their intent to have issues of

20   arbitrability decided by an arbitrator, not the court.   *See Oracle Am., Inc. v. Myriad*

21   *Group. A.G.*, 724 F.3d 1069, 1077 (9th Cir. 2013) ("Incorporation of the [forum]

22   arbitration rules into the parties' commercial contract constitutes clear and

23   unmistakable evidence that the parties agreed to arbitrate arbitrability."); *Fallo v.*

24   *High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009) (concluding that the arbitration

25   provision's incorporation of the AAA Rules constituted a "clear and unmistakable

---

26

27       [6]   AAA Commercial Arbitration Rules and Mediation Procedures, available at
https://www.adr.org/aaa/ShowProperty?nodeId=/UCM/ADRSTG_004103&revision=latestreleased
28   (last visited June 23, 2014).

-12-

expression of the parties' intent to leave the question of arbitrability to an arbitrator"); *Qualcomm, Inc. v. Nokia Corp*., 466 F.3d 1366, 1372-73 (Fed. Cir. 2006) (holding that an arbitration clause which incorporated the AAA Rules clearly and unmistakably showed the parties' intent to delegate the issue of determining arbitrability to an arbitrator); *Terminix Intern. Co., LP v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327, 1332-333 (11th Cir. 2005) (holding that, by incorporating the AAA rules into the arbitration agreement, the parties had clearly and unmistakably agreed than an arbitrator must decide whether the arbitration clause is valid); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (holding that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Kimble v. Rhodes College, Inc.*, No. C–10–5786 EMC, 2011 WL 2175249, *2-4 (N.D. Cal. June 2, 2011) (granting motion to compel arbitration and delegating question of arbitrability to the arbitrator pursuant to the incorporation of the AAA's consumer rules); *Madrigal v. New Cingular Wireless Services, Inc.*, No. 09-CV-00033-OWW-SMS, 2009 WL 2513478 *6 (E.D. Cal. Aug. 17, 2009) (holding that "[c]onsistent with the great weight of authority, by incorporating the language of Rule 7 of the AAA commercial arbitration rules into their arbitration agreement, the parties clearly and unmistakably expressed their intent to have the arbitrator decide disputes over the scope of the arbitration agreement."); *Clarium Capital Management, LLC v. Choudhury*, Nos. C 08-5157SBA, 06-5255, 2009 WL 331588, at *5 (N.D. Cal. Feb. 11, 2009) ("The incorporation of the AAA rules in the arbitration agreement is 'clear and unmistakable' evidence of the parties' intent to delegate the issue of arbitrability to the arbitrator."); *Visa USA, Inc. v. Maritz, Inc*., No. C 07-05585 JSW, 2008 WL 744832, *5 (N.D. Cal. March 18, 2008) ("By the explicit incorporation of the AAA rules, the parties clearly and unmistakenly agreed that questions of arbitrability would be submitted to arbitration for resolution.").

1    Here, the parties agreed to submit issues of enforceability to the arbitrator,

2    ending any inquiry about the enforceability of the arbitration provisions and

3    directing this matter to the AAA.

4

5    **G.    <u>This Action Should Be Dismissed or, Alternatively, Stayed Pending</u>**

6    **<u>Arbitration</u>**

7    In addition to moving to compel arbitration, the School moves for dismissal

8    or, alternatively, a stay of the instant proceeding pending the completion of

9    arbitration.  The Court has the discretion to order dismissal without prejudice in lieu

10   of a stay, and a dismissal is proper in this case, where all of the issues raised in the

11   action must be submitted to arbitration.  *See Moses H. Cone*, 460 U.S. at 26-28

12   (finding no substantive distinction between a stay and a dismissal without

13   prejudice).  Alternatively, the FAA provides that once the Court is satisfied that the

14   matter can be arbitrated, the Court, "shall on application of one of the parties, stay

15   the trial of the action."  9 U.S.C. § 3; *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 26

16   ("[S]tate courts, as much as federal courts, are obliged to grant stays of litigation

17   under § 3 of the Arbitration Act.").  In any event, dismissal of this case or a stay is

18   mandatory.

19

20   **IV.   <u>CONCLUSION</u>**

21   For the aforementioned reasons, the School respectfully requests that the

22   Court enter an order granting the School's motion, compelling Plaintiff to submit his

23   alleged claims to individual arbitration before the AAA, dismissing, or alternatively,

24   staying all proceedings pending arbitration, and granting any other relief the Court

25   deems just and proper.

26

27

28

1  DATED:   July 1, 2014                    PAYNE & FEARS  LLP

2

3

4                                    By:  _____
                                              /s/ Matthew J. Cute
5                                             MATTHEW J. CUTE

6                                    Attorneys for Defendant
                                     CORINTHIAN COLLEGES, INC.
7

8

9
   4848-6829-8012.1
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-15-
DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL
INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION