# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | EDCV 14-1296-GW(MANx) | Date | July 31, 2014 |
| Title | William G. Ransel, et al. v. Corinthian Colleges, Inc., et al. | | |

Present: The Honorable GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Katie Thibodeaux | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:      Attorneys Present for Defendants:

Alexander Roa                          Jeffrey K. Brown

**PROCEEDINGS:** DEFENDANT CORINTHIAN COLLEGES, INC.'S MOTION TO COMPEL INDIVIDUAL ARBITRATION AND DISMISS OR STAY PROCEEDINGS PENDING ARBITRATION [10]

The Court's Tentative Ruling is circulated and attached hereto. Court hears oral argument. Based on the Tentative and for reasons stated on the record, Defendant's Motion is GRANTED.

Parties will meet and confer as to whether this action can be dismissed without prejudice or whether the parties prefer staying the matter. A Status Conference is set for **August 7, 2014 at 8:30 a.m.** A Joint Status Report will be filed by noon on August 5, 2014. Parties may appear telephonically, provided that notice is given to the clerk at least two business days prior to the hearing.

:      04

Initials of Preparer   JG

*William Ransel v. Corinthian Colleges, Inc., et al.*; Case No. CV-14-1296-GW(MANx)
Tentative Ruling on Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings Pending Arbitration

Plaintiff William Ransel ("Ransel") filed suit in state court against Defendants Corinthian Colleges, Inc. ("Corinthian" or the "School") and Daphne Hendon ("Hendon") (collectively, ("Defendants"), asserting claims for: (1) fraud; (2) misrepresentation; (3) breach of contract; (4) unjust enrichment; (5) declaratory relief; (6) unfair competition, Cal. Bus. & Prof. Code § 17200; (7) false advertising, *id.* § 17500; (8) "Private Attorney General Act, Qui Tam action" ("PAGA/*Qui Tam*"); and (9) conversion/theft by trick or device. *See* First Amended Complaint ("FAC"), Docket No. 1-2. After removing the case to this Court, Corinthian filed the instant motion to compel individual arbitration. *See* Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings Pending Arbitration ("Mot."), Docket No. 11. Ransel concedes that he must arbitrate most of his claims, but contends he cannot be compelled to arbitrate his PAGA/*Qui Tam* claim. For the reasons discussed below, the Court would GRANT Corinthian's motion and COMPEL the parties to arbitrate their dispute, including the threshold question of whether Ransel's PAGA/*Qui Tam* claim is arbitrable. The instant action will be STAYED pending arbitration.

**I. Introduction**

In January 2009, Ransel enrolled Corinthian's Electrician program (the "Program") at the School's Everest campus in San Bernadino. *See* FAC ¶¶ 11, 91. In connection with his enrollment, Ransel executed an Application/Enrollment Agreement (the "Enrollment Agreement"), Docket No. 12-1, and an Enrollment Agreement Addendum & Disclosures (the "Addendum"), Docket No. 12-2. The Enrollment Agreement contains a binding arbitration clause which states, among other things, that Ransel:

> "[U]nderstand[s] that both [he] and The School are irrevocably waiving rights to a trial by jury and are selecting instead to submit any and all claims to the decision of an arbitrator instead of a court.

Enrollment Agreement at 3. The Addendum further states:

> "Both [Ransel] and the School irrevocably agree that any dispute between us shall be submitted to arbitration."

Addendum at 5. In addition, the Addendum provides:

> [A]ny dispute arising from [Ransel's] enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the Federal Arbitration Act conducted by the American Arbitration Association ("AAA") under its Consumer Rules.

Addendum at 5.

In October 2013, Ransel filed suit state court, asserting that the School's recruiting tactics were misleading and that the School's misrepresentations caused him to take on unnecessary (and unwise) student loan debt. Compl., Docket No. 1-1, ¶¶ 8-14. In May 2014, Ransel filed the FAC in state court, asserting similar claims, except now on behalf of a putative nationwide class. FAC ¶¶ 2, 5, 9, 15. After removing the case to this Court, Corinthian filed the instant motion to compel individual arbitration. Ransel does not contest the validity of the parties' arbitration agreement and concedes that he must arbitrate most of his claims. *See* Opposition to Motion to Compel Individual Arbitration and Dismiss or Stay Proceedings Pending Arbitration ("Opp."), Docket No. 16.

Nonetheless, Ransel contends he cannot be compelled to arbitrate his PAGA/*Qui Tam* claim under the California Supreme Court's recent decision in *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal.4th 348 (2014). Corinthian has two responses to this argument. First, Corinthian argues that the parties expressly delegated arbitrability questions to the arbitrator by incorporating the AAA rules. Thus, rather than this Court, the arbitrator should determine whether Ransel's PAGA/*Qui Tam* claim is arbitrable. Second, even if the Court were to consider the arbitrability question, Corinthian contends that controlling Ninth Circuit authority requires that Ransel arbitrate all of his claims.

## II. Analysis

For the reasons discussed below, the Court agrees with Corinthian that the parties delegated threshold arbitrability questions to the arbitrator.[1] Accordingly, the Court need not – and does not – address the thornier question of whether Ransel's PAGA/*Qui Tam* claim is actually arbitrable.

### A. *Who Decides Arbitrability?*

The Federal Arbitration Act ("FAA") reflects a "liberal federal policy favoring arbitration agreements," *AT&T Mobility L.L.C. v. Concepcion*, 131 S.Ct. 1740, 1745 (2010) (citations omitted), and embodies "the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sciences, Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989)). Consistent with this principle, parties may agree to limit the issues subject to arbitration, *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 628 (1985), limit with whom they will arbitrate, *Stolt-Nielsen*, 559 U.S. at 681-87, and specify the rules governing their arbitration, *Volt*, 489 U.S. at 479.

Parties may also agree to delegate to the arbitrator "gateway" issues concerning the scope and enforcement of the arbitration agreement – that is, they may agree to arbitrate whether their dispute should go to arbitration at all. *First Options of Chicago v. Kaplan*, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question who has the primary power to decide arbitrability turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?") (citations and quotations omitted). As the Supreme Court recently explained, an "agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional

---

[1] Ransel does not dispute that Hendon is entitled to enforce the arbitration agreement on the same terms as Corinthian despite being a non-signatory. *See* Mot. at 8 & n.5 (arguing Hendon is entitled to compel arbitration). Accordingly, while the discussion refers to Corinthian (as the principal defendant), it applies equally to Hendon.

arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010).

But while the Supreme Court has "long recognized and enforced a liberal federal policy favoring arbitration agreements," and while "delegation" provisions ostensibly stand on the same footing as all others in an arbitration agreement, the Court has made clear that the question of "whether the parties have submitted a particular dispute to arbitration, *i.e.*, the 'question of arbitrability,' is 'an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT & T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator")) (other citations and quotations omitted). Thus, the question of whether the parties delegated the threshold question of arbitrability to the arbitrator is measured against a heightened standard that asks whether the parties "clearly and unmistakably" manifested an intent to have the arbitrator decide gateway arbitrability questions. *See First Options*, 514 U.S. at 944 ("Courts should not assume that the parties agreed to arbitrate arbitrability unless there is 'clear and unmistakable' evidence that they did so") (citations omitted, punctuation altered); *Rent-A-Ctr.*, 561 U.S. at n.1 (describing "clear and unmistakable" as a "heightened standard" used to determine whether parties manifested an intent to delegate arbitrability to an arbitrator).[2]

In recent years, federal courts have repeatedly held that arbitration agreements can incorporate an enforceable "delegation" provision (*i.e.*, a provision delegating to the arbitrator authority to resolve threshold questions) by referencing private arbitration rules that clearly provide for delegation. *See Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013) ("Virtually every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability"); *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012); *Fallo v. High-Tech Inst.*, 559 F.3d 874, 878 (8th Cir. 2009); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006) (applying Ninth Circuit law); *Terminix Int'l Co. v. Palmer Ranch LP*, 432 F.3d 1327, 1332 (11th Cir. 2005); *Contec Corp. v. Remote Solution Co.*, 398 F.3d 205, 208 (2d Cir.2005); *see also, e.g., Bernal v. Southwestern & Pac. Specialty Fin., Inc.*, No. 12-CV-5797-SBA, 2014 U.S. Dist. LEXIS 63338, at *8 (N.D. Cal. May 6, 2014) ("Where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules – such as the AAA Rules – that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and

---

[2] Ransel does not specifically dispute the delegation provision's validity (or the validity of any other arbitration provision); he only challenges whether the arbitration agreement applies to his PAGA/*Qui Tam* claim. Under these circumstances, the Court must treat the delegation provision as valid and enforceable even if Ransel raises challenges to other aspects of the arbitration agreement. *Rent-A-Ctr.*, 561 U.S. at 72 ("[U]nless Jackson challenged the delegation provision specifically, we must treat it as valid under § 2, and must enforce it under §§ 3 and 4, leaving any challenge to the validity of the Agreement as a whole for the arbitrator"); *see also, e.g., Valley Power Sys. v. GE*, No. 11-CV-10726-CAS(JCx), 2012 U.S. Dist. LEXIS 26228, at *13 (C.D. Cal. Feb. 27, 2012) ("As in [*Rent-A-Ctr.*], here while VPS asserts that the arbitration provision is unconscionable, VPS does not specifically challenge the arbitration provision's express selection of the ICDR Rules, which delegates the determination of enforceability issues to the arbitrators. Accordingly, the Court finds that whether the arbitration provision is enforceable is a determination to be made by the arbitrators").

the issue is decided by the arbitrator") (citations and quotations omitted); *Kimble v. Rhodes College, Inc.*, No. 10-CV-5786-EMC, 2011 U.S. Dist. LEXIS 59628, at *6-*12 (N.D. Cal. June 2, 2011) (in a case with basically identical facts, holding that student and school had clearly and unmistakably delegated arbitrability questions to the arbitrator by incorporating AAA Consumer Rules); *Madrigal v. New Cingular Wireless Servs.*, No. 09-CV-33-OWW(SMSx), 2009 U.S. Dist. LEXIS 72416, at *13 (E.D. Cal. Aug. 17, 2009) ("Numerous courts have examined the language in [the AAA Rules] and concluded that, when incorporated into an arbitration agreement, it clearly and unmistakable evidences the parties' intent to arbitrate the scope of the arbitration agreement, i.e., to arbitrate whether a claim or claims fall(s) within the scope of the arbitration agreement") (citations omitted); *Bank of Am., N.A. v. Micheletti Family P'ship*, No. 08-CV-2902-JSW, 2008 U.S. Dist. LEXIS 117100, at *16 (N.D. Cal. Oct. 14, 2008) ("[T]he cases hold that where the parties' agreement to arbitrate includes an agreement to follow a particular set of arbitration rules – such as the AAA Rules – that provide for the arbitrator to decide questions of arbitrability, the presumption that courts decide arbitrability falls away, and the issue is decided by the arbitrator") (citations omitted).[3]

Though some federal courts seem to disagree, the question of whether parties clearly and unmistakably manifested an intent to delegate arbitrability is actually governed by state contract law (albeit state contract law supplemented by the "reverse presumption" against delegation). *Wynn Resorts, Ltd. v. Atl.-Pac. Capital, Inc.*, 497 Fed.Appx. 740, 741 (9th Cir. 2012); *First Options*, 514 U.S. at 944-45. But, ultimately, the governing law does not much matter in this case since California courts have reached the same conclusion as the majority of federal courts, finding that incorporating the "AAA rules by reference [can show] 'clear and unmistakable' evidence that the parties intended to submit the question of arbitrability to the arbitrator, so long as what is being incorporated actually exists at the time of incorporation such that 'the parties can know exactly what they are incorporating.'" *Yahoo! Inc. v. Iversen*, 836 F.Supp.2d 1007, 1012 (N.D. Cal. 2011) (quoting *Gilbert St. Developers, LLC v. La Quinta Homes, LLC*, 174 Cal.App.4th 1185, 1194 (2009) and citing *Rodriguez v. Am. Technologies, Inc.*, 136 Cal.App.4th 1110 (2006); *Dream Theater, Inc. v. Dream Theater*, 124 Cal.App.4th 547 (2004)); *see also Greenspan v. Ladt, LLC*, 185 Cal.App.4th 1413, 1442 (2010) ("[W]hen . . . parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of the parties' intent to delegate such issues to an arbitrator"); *Williams Constr. Co. v. Standard-Pacific Corp.*, 254 Cal.App.2d 442, 454 (1967) ("A contract may validly include the provisions of a document not physically a part of the basic contract" if the reference is "clear and unequivocal" and "called to the attention of the other party," and provided "the terms of the incorporated document

---

[3] Appellate courts have primarily rendered these decisions in commercial settings, and the Ninth Circuit has expressly "express[ed] no view" on whether delegation-by-reference applies with equal force to consumer contracts. *See Oracle Am., Inc.*, 724 F.3d at n.2 ("We express no view as to the effect of incorporating arbitration rules into consumer contracts"). At least one district court has concluded that it does not. *Tompkins v. 23andMe, Inc.*, No. 14-CV-429-LHK, 2014 U.S. Dist. LEXIS 88068, at *42 (N.D. Cal. June 25, 2014) ("While incorporation by reference is generally permissible under ordinary contract principles, *see Williams Constr. Co. v. Standard-Pacific Corp.*, 254 Cal.App.2d 442, 454 (1967), incorporation of the AAA rules does not necessarily amount to 'clear and unmistakable' evidence of delegation, particularly when the party asked to accept the agreement is a consumer").

[are] known or easily available to the contracting parties") (citations and quotations omitted).
Here, the parties agreed in the Addendum that:

> [A]ny dispute arising from [Ransel's] enrollment, no matter how described, pleaded or styled, shall be resolved by binding arbitration under the [FAA] conducted by the American Arbitration Association ("AAA") under its Consumer Rules.

Addendum at 5. When Ransel signed the Addendum, the existing AAA Consumer Rules provided, among other things, that "*[t]he Commercial Dispute Resolution Procedures and these Supplementary Procedures for Consumer-Related Disputes shall apply* whenever the American Arbitration Association (AAA) or its rules are used in an agreement between a consumer and a business[.]" *See* AAA, Consumer-Related Disputes Supplementary Procedures, R. C-1 (effective Sept. 15, 2005), available at http://goo.gl/fuy5y4 (last visited July 23, 2014) (emphasis added). The then-existing Commercial Rules provided that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement." AAA, Commercial Arbitration Rules and Mediation Procedure, R. 7(a) (effective September 1, 2007), available at http://goo.gl/Y6mdU2 (last visited July 23, 2014).

By expressly incorporating the AAA Rules into their agreement, including the provision that the arbitrator "shall have the power to rule on his or her own jurisdiction," the parties clearly and unmistakably delegated threshold arbitrability questions to the arbitrator. *See, e.g., Oracle Am., Inc.*, 724 F.3d at 1074; *Kimble*, 2011 U.S. Dist. LEXIS 59628, at *6-*12; *Yahoo! Inc.*, 836 F.Supp.2d at 1012; *Greenspan*, 185 Cal.App.4th at 1442; *Rodriguez*, 136 Cal.App.4th at 1123; *Dream Theater, Inc.*, 124 Cal.App.4th at 554. These threshold arbitrability questions include "whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *BG Grp., PLC v. Republic of Argentina*, ---U.S.---, 134 S. Ct. 1198, 1206 (2014). Thus, unless the Court were to find Corinthian's assertion of arbitrability "wholly groundless," it must compel Ransel to take his threshold dispute – whether his PAGA/*Qui Tam* claim is arbitrable – to the arbitrator. *See, e.g., Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011) (holding that question of whether exemption to FAA made claim non-arbitrable was a threshold question of arbitrability to be decided by the arbitrator pursuant to parties' express agreement to delegate arbitrability questions).

### B. *Is Corinthian's Assertion of Arbitrability "Wholly Groundless"*

Even where courts conclude that parties clearly and unmistakably delegated arbitrability disputes to the arbitrator, they often perform a limited inquiry to determine whether the assertion of arbitrability is "wholly groundless." While the Ninth Circuit has not yet weighed in the propriety of conducting a "wholly groundless" analysis, the weight of appellate authority supports it, and this Court finds it sound. *See Douglas v. Regions Bank*, No. 12-60877, 2014 U.S. App. LEXIS 12787, at *9 (5th Cir. July 7, 2014); *Qualcomm Inc. v. Nokia Corp.*, 466 F.3d 1366, 1373 (Fed. Cir. 2006); *Local No. 358, Bakery & Confectionery Workers Union, AFL-CIO v. Nolde Bros., Inc.*, 530 F.2d 548, 553 (4th Cir. 1975) *aff'd*, 430 U.S. 243 (1977); *see also Ellsworth v. United States Bank, N.A.*, No. 12-CV-2506, 2012 U.S. Dist. LEXIS 134252, at *15 (N.D. Cal. Sept. 19, 2012) ("If, however, the court concludes that the parties to the agreement did clearly and unmistakably intend to delegate the power to decide arbitrability to an arbitrator, then the court should perform a second, more limited inquiry to determine whether the assertion of arbitrability is "wholly groundless") (collecting

cases); *but see Douglas*, 2014 U.S. App. LEXIS 12787, at *11 ("The majority adopts the 'wholly groundless' test put forth by the Federal Circuit, which has not been adopted by this circuit and appears to be contrary to Supreme Court authority") (Dennis, J., dissenting). After all, even if a person consents to delegation, he does not do so intending to "go through the rigmaroles of arbitration just so the arbitrator can [tell him] in the first instance [his] claim has nothing whatsoever to do with [the parties'] arbitration agreement[.]" *Douglas*, 2014 U.S. App. LEXIS 12787, at *9.

Here, Ransel undoubtedly agreed to arbitrate some of the claims at issue. Between the Enrollment Agreement and Addendum, Ransel promised to submit "any dispute" and "any and all claims" to binding arbitration. Enrollment Agreement at 3; Addendum at 5. Even if a PAGA/*Qui Tam* claim is not arbitrable or falls beyond the scope of the parties' agreement, Corinthian's assertion of arbitrability for at least some of Ransel's claims is not groundless, let alone "wholly groundless." Thus, the question of whether Ransel's PAGA/*Qui Tam* claim is arbitrable falls within the province of the arbitrator. *See Qualcomm*, 466 F.3d at 1374 ("Because any inquiry beyond a 'wholly groundless' test would invade the province of the arbitrator, whose arbitrability judgment the parties agreed to abide by in the 2001 Agreement, the district court need not, and should not, determine whether Nokia's defenses are in fact arbitrable"); *Madrigal*, 2009 U.S. Dist. LEXIS 72416, at *18 & n.6 ("To respect the province of the arbitrator, no opinion is expressed on whether the claims in this case actually fall within the scope of the arbitration agreement"). This Court expresses no opinion on the ultimate question of whether Ransel's *PAGA/Qui Tam claim* is arbitrable under *Iskanian*, *Ferguson v. Corinthian Colleges, Inc.*, 733 F.3d 928 (9th Cir. 2013), or any other authority.

## III. Conclusion

For the reasons discussed above, the Court would GRANT Corinthian's motion and COMPEL the parties to arbitrate their dispute, including the threshold question of whether Ransel's PAGA/*Qui Tam* claim is arbitrable. The instant action will be STAYED pending arbitration. The Court sets a status conference for January 12, 2014 at 8:30 a.m. and the parties are to file by January 8, 2014, a joint report no longer than two pages as to the status of the arbitration.